UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


DONALD R. MAHADAY,

                    Petitioner,

v.                                              CASE NO. 02-CV-72363-DT
                                                HONORABLE AVERN COHN
JOHN CASON,

                    Respondent.
_____/

## OPINION AND ORDER DENYING HABEAS CORPUS PETITION

### I.  Introduction

This is a habeas corpus case under 28 U.S.C. § 2254.  Donald R. Mahaday (Petitioner) has been convicted of first-degree murder and assault with intent to commit murder.  He claims to be incarcerated in violation of his constitutional rights.  Respondent urges the Court to deny the petition.  For reasons that follow, the petition will be denied.

### II.  Background

### A.  The State Court Proceedings

In 1979, a jury in the former Recorder's Court for the City of Detroit, Michigan found Petitioner guilty of felony murder, MICH. COMP. LAWS §750.316, and assault with intent to commit murder, MICH. COMP. LAWS § 750.83.  The convictions arose from charges that Petitioner or his co-defendant, Michael Loukas, shot two hitchhikers during

a robbery or attempted robbery.[1]  William Crayne was shot in the head and died from

his wounds.  Richard Nagy also was shot; he survived, but he had little memory of the

incident and was unable to identify the perpetrators of the crimes.  A primary witness for

the prosecution was Jeff Galloway, who testified that Petitioner admitted to shooting the

victims.  Petitioner testified that Michael Loukas shot the two victims while he

(Petitioner) sat in Loukas's car.  The prosecutor's theory was that Petitioner shot the

victims or aided and abetted Michael Loukas in committing the crimes.

The trial court sentenced Petitioner to life imprisonment for the murder and to a

term of fifteen to twenty-five years in prison for the assault.  On direct appeal from his

convictions, Petitioner raised several claims, including two habeas claims about the jury

instruction on intoxication and the prosecutor's use of a misdemeanor conviction.  The

Michigan Court of Appeals was unpersuaded by Petitioner's arguments and affirmed his

convictions in a published per curiam opinion.  See People v. Mahaday, 108 Mich. App.

591 (1981).  The Michigan Supreme Court denied leave to appeal because it was not

persuaded that the questions presented should be reviewed.  See People v. Mahaday,

411 Mich. 1079 (1981).

On an undetermined date many years later, Petitioner filed a motion for relief

from judgment.  The trial court denied the motion on May 14, 1999, after stating that it

would not reconsider Petitioner's claim that Jeff Galloway committed perjury, because

Petitioner had raised that claim in an unsuccessful motion for new trial.  The trial court

determined that Petitioner had failed to establish "good cause" under Michigan Court

---

[1] A jury convicted Michael Loukas in a separate proceeding of second-degree murder and assault with intent to commit murder.

2

Rule 6.508(D)(3) for not raising his other claims on appeal.

Petitioner raised his habeas claims in an appeal from the trial court's order.  The Michigan Court of Appeals denied leave to appeal because Petitioner had failed to establish entitlement to relief under Michigan Court Rule 6.508(D).  See People v. Mahaday, No. 233009 (Mich. Ct. App. June 26, 2001).  On March 4, 2002, the Michigan Supreme Court denied leave to appeal for the same reason.  See People v. Mahaday, 465 Mich. 958 (2002).

## B.  The Federal Court Proceedings

Petitioner filed his pro se habeas corpus petition on June 10, 2002.  The grounds for relief are:

A.   Conviction based on perjured testimony.  Prosecution witness Jefferson Galloway wrote a letter to Petitioner's family recanting his testimony.

B.   Ineffective assistance of trial and appellate counsel. Petitioner was granted immunity for his testimony against Michael Loukas and was originally not charged in this matter.  Loukas was bound over for trial and Petitioner was released from custody.  Several months later, Petitioner was charged with the crime.  This issue was never raised by trial or appellate counsel.

C.   Prosecutorial misconduct

1.   In an attempt to prove that a robbery had occurred, the prosecutor (a) gave the jury the impression that the victims' wallets were missing at the crime scene and (b) suppressed evidence that wallets and other personal effects were returned to the victims' families. (Pursuant to police report).

2.   The prosecutor injected personal beliefs that were not supported by fact.  All evidence and testimony showed that there was only one

3

shooter during the commission of the crime. The prosecutor repeatedly stated that he "thought both defendants shot the victims" and that he "thought defendants passed the gun around."

3.      The prosecutor failed to disclose that he had made a deal with a prosecution witness. The prosecutor arranged for the witness to receive a light sentence for armed robbery in exchange for his testimony.

4.      The prosecutor misstated evidence in his closing arguments. Though there were no prosecution witnesses present at the crime scene, the prosecutor stated that the witnesses had "seen and heard" the crime being committed.

5.      The prosecutor misstated the law. The prosecutor told the jury "all you have to do is threaten a person and ask for money, that is attempted armed robbery."

D.      Petitioner was impeached with a nonexistent felony conviction. While cross examining Petitioner, the prosecutor accused Petitioner of being guilty of a felony which was actually a misdemeanor.

E.      Trial counsel was ineffective where he failed to object to hearsay testimony. A prosecution witness testified as to what he was told by Petitioner's co-defendant.

F.      The trial court failed to instruct the jury on Petitioner's theory of the case. The underlying felony was never proven and Petitioner's contention that the only crime he committed was "taking money under false pretenses," which is a misdemeanor, was never explained to the jury.

G.      Trial counsel was deficient where he failed to file a pretrial motion to quash the felony murder charge where there was no evidence that a felony took place.

H.      Juror misconduct denied Petitioner a fair trial. A juror stated on the first day of trial that she believed Petitioner was guilty.

4

I.      The trial court's instruction on intoxication was inadequate.

On receipt of the habeas petition, the Court appointed the Federal Defender Office to represent Petitioner.  Respondent subsequently filed a responsive pleading in which he urged the Court to dismiss Petitioner's claims as procedurally defaulted.  The Court disagreed with Respondent's analysis and ordered him to file a response on the merits, because Petitioner's conviction became final before the procedural rule in question was enacted.  Respondent then filed a supplemental answer in which he urged the Court to deny the habeas petition on the merits.[2]

Petitioner filed a reply brief and a motion for discovery, which the Court granted. Eight months later, Petitioner reported on the discovery process and requested an evidentiary hearing.  The Court granted his motion and held an evidentiary hearing on November 9, 2004 which focused primarily on Petitioner's first and second habeas claims regarding Jeff Galloway's alleged perjured testimony and the alleged promise of immunity.  The parties presented their final arguments to the Court on March 18, 2005. The matter is now ready for decision.

### III.  Discussion

### A.  Standard of Review

Petitioner is entitled to the writ of habeas corpus only if he can show that the state court's adjudication of his claims on the merits–

(1) resulted in a decision that was contrary to, or involved an
unreasonable application of, clearly established Federal law, as

---

[2] Although Petitioner probably did not comply with the one-year statute of limitations, 28 U.S.C. § 2244(d), Respondent waived that defense by not pleading it. Scott v. Collins, 286 F.3d 923, 927-28 (6th Cir. 2002).

5

determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 413 (2000). A state court's decision is an "unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id.

"[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." Id. at 409. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411.

When a state court fails to rule on a petitioners's constitutional claims or fails to explain its reasoning, a federal habeas court must look at the result of the state court's decision. Bugh v. Mitchell, 329 F.3d 496, 507-08 (6th Cir. 2003), cert. denied, 540 U.S. 930 (2003). The question in such circumstances is whether the state court's decision was contrary to clearly established Supreme Court precedent, because the state court

6

did not identify the governing legal principle and apply that principle to the facts.  Id.

## B.  Perjury

The first habeas claim alleges that Petitioner's conviction was based on the perjured testimony of Jeff Galloway.  Galloway testified that Petitioner admitted shooting the victims.  Galloway also testified that, according to Petitioner's co-defendant, Michael Loukas, Petitioner looked for the victims' wallets after shooting them.  Following trial, Galloway allegedly recanted his trial testimony in communications with Petitioner's father, Mr. Donald A. Mahaday.

A prosecutor's "deliberate deception of a court and jurors by the presentation of known false evidence is incompatible with 'rudimentary demands of justice.'"  Giglio v. United States, 405 U.S. 150, 153 (1972) (quoting Mooney v. Holohan, 294 U.S. 103 (1935)).  "A new trial is required if 'the false testimony could . . . in any reasonable likelihood have affected the judgment of the jury. . . . '"  Id. at 154 (quoting Napue v. Illinois, 360 U.S. 264, 271 (1959)).  However, to prevail on a claim of perjury, a petitioner "must show that the statements were material, that they were actually false, and that the prosecution knew they were false."  United States v. Hawkins, 969 F.2d 169, 175 (6th Cir. 1992).

Petitioner's father has asserted that Jeff Galloway recanted his trial testimony in a letter written to him and in a subsequent face-to-face encounter with him while Galloway was incarcerated.  Galloway apologized to Mr. Mahaday for his trial testimony, and he stated that he had lied on the witness stand.  The reasons he gave for lying at trial were that he suspected Petitioner was "messing" with his girlfriend, he was threatened by Michael Loukas's family, and he did not realize that Petitioner would

7

receive a life sentence.  (Renewed Motion for Evidentiary Hearing, Exh. 4; Tr. Nov. 9, 2004, at 23-25.)

Galloway's alleged recantations must be "viewed with extreme suspicion." United States v. Chambers, 944 F.2d 1253, 1264 (6th Cir.1991).  They were inconsistent not only with his sworn testimony at trial, but with Sherry Jurumu's trial testimony as well.[3]  Furthermore, Petitioner has been unable to produce a taped statement of Jeff Galloway's recantation, and at a deposition taken of Galloway on October 28, 2004, Galloway recanted his recantation.  He maintained that his trial testimony was truthful.  (Tr. Nov. 9, 2004, at 5.)

The record does not support the contention that Jeff Galloway's trial testimony was false or that the prosecution knew it was false.  Accordingly, the state court's rejection of Petitioner's first claim was not contrary to Supreme Court decisions on the use of perjured testimony.

## C.  Trial and Appellate Counsel

Petitioner's second, fifth, and seventh claims allege ineffective assistance of trial and appellate counsel.  Petitioner alleges that his attorneys failed to assert a claim of immunity from prosecution, neglected to object to hearsay, and failed to file a pretrial motion to quash the felony murder charge.

---

[3] Jurumu testified that Petitioner and Michael Loukas had said they intended to "rip-off" the victims by selling them fake mescaline.  Petitioner and Loukas then left home.  Petitioner had a gun in the waistband of his pants.  The two men returned home about forty-five minutes later.  Petitioner still had the gun, and he told Michael Loukas to "shut up" when Loukas started to talk about a shooting.  On the next day, Jurumu saw the gun in Petitioner's bedroom.  (Tr. July 17, 1979, at 161-69.)

8

To prevail on a claim of ineffective assistance of counsel, Petitioner must show that defense counsel's performance was deficient and that the deficient performance prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687 (1984). The first prong of this test requires showing that defense "counsel's representation fell below an objective standard of reasonableness." Id. at 688. The second prong requires demonstrating "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. "[T]he requisite prejudice cannot be shown if the claims are found to lack merit." Burton v. Renico, 391 F.3d 764, 774 (6th Cir. 2004).

### 1. Immunity

Petitioner alleges that his trial and appellate attorneys were ineffective for not investigating his contention that he was granted immunity for testifying against Michael Loukas. The Supreme Court stated in Strickland, that "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." Strickland, 466 U.S. at 691.

Ineffective assistance occurs when an attorney's failure to conduct a reasonable investigation results in prejudice to the defendant. Towns v. Smith, 395 F.3d 251, 258 (6th Cir. 2005). A failure to investigate key evidence may not be excused if the omission was the result of negligence, not strategy. Sims v. Livesay, 970 F.2d 1575, 1580-81 (6th Cir. 1992).

9

Petitioner initially purported to be a witness to the shootings.  He testified at trial and at the evidentiary hearing here that, a few days after the shooting, he approached the police and told them that he was present when Michael Loukas shot and killed someone.  The police held him in custody for a few days and then released him.  They did not charge him with a crime, and they assured him that he would not be charged if he were merely present during the crime.  Because he subsequently received threatening telephone calls, the police arranged for him to fly to Ohio to stay with relatives.  The police later brought him back to Michigan to testify at Michael Loukas's preliminary examination.  Shortly before the examination, a prosecutor assured Petitioner that, so long as he testified consistently with his prior statement to the police, he would not be charged with a crime.  He went home after testifying against Loukas, but he was arrested approximately six weeks later and was charged with murder.  He informed the attorney who was appointed to represent him that he had been granted immunity.  The attorney, however, stated that the police had a new witness and they were charging both Petitioner and Michael Loukas.  Following his conviction, Petitioner informed his appellate attorney about the promise of immunity, but the attorney merely promised to look into the matter.  (Tr. July 17, 1979, at 279-86, 309; Tr. Nov. 9, 2004, at 9-17, 20.)

The record confirms that Petitioner was given special treatment, and his claim of immunity is not inconsistent with the prosecutor's alleged comment that Petitioner would not be prosecuted if he testified consistently with his prior statement to the police.  However, Petitioner has been unable to produce an immunity agreement, and he testified at Michael Loukas's preliminary examination that he was <u>not</u> testifying as a

10

result of the authorities' threat to prosecute him if he did not testify.  <u>See</u> Petitioner's bound exhibits, Exh. E, at 37.

Furthermore, a promise of immunity is predicated on truthful testimony.  <u>See</u> MICH COMP. LAWS § 780.702(3).  The record indicates that, after Petitioner testified against Michael Loukas, Jeff Galloway approached the authorities with evidence suggesting that Petitioner was involved in the murder.  Petitioner subsequently was arrested and charged with the crimes.

The police were entitled to prosecute Petitioner in light of new evidence that Petitioner participated in the shooting and had not been entirely truthful with the police. Petitioner conceded at trial that the promise not to charge him was based on a showing that he did not participate in the shooting.  (Tr. July 17, 1979, at 283-84.)  Thus, Petitioner's attorneys were not ineffective for allegedly failing to investigate or assert Petitioner's claim of immunity.

### 2.  Hearsay

Petitioner alleges next that his trial attorney should have objected to hearsay testimony that was admitted at trial.  The Court presumes that Petitioner is referring to Jeff Galloway's testimony that Michael Loukas said Petitioner looked for the victims' wallets after shooting them.  (<u>Id</u>. at 222-23.)

Even assuming that defense counsel's performance was deficient for failing to object to this testimony, Petitioner was not prejudiced by his attorney's omission.  He admitted at trial that he intended to take the victims' money in return for fake drugs (<u>Id</u>. at 281, 291), and other witnesses testified that they heard Petitioner and Michael Loukas announce that they were going to "rip off" some people with fake mescaline.

11

(Id. at 163-65, 212-13.)

The result of the trial likely would not have been different had defense counsel objected to hearsay testimony that Petitioner looked for the victims' wallets. Thus, Petitioner was not prejudiced by defense counsel's failure to object to the testimony. Because Petitioner has not demonstrated deficient performance and resulting prejudice, his attorney's omission did not amount to ineffective assistance.

### 3. Failure to Move to Quash the Felony Murder Charge

Petitioner's final allegation about his trial attorney is that the attorney did not move to quash the felony murder charge. Petitioner contends that there was no evidence that a felony took place.

In Michigan, "[a] district court must bind a defendant over for trial when the prosecutor presents competent evidence constituting probable cause to believe that (1) a felony was committed and (2) the defendant committed that felony." People v. Northey, 591 N.W.2d 227, 230 (1998); see also MICH. COMP. LAWS § 766.13; Mich. Ct. R. 6.110(E). The elements of felony murder are:

> (1) [t]he killing of a human being (2) with the intent to kill, to do great bodily harm, or to create a high risk of death or great bodily harm with knowledge that death or great bodily harm was the probable result (3) while committing, attempting to commit, or assisting in the commission of any of the felonies specifically enumerated in MCL 750.316; MSA 28.548.

People v. Thew, 506 N.W.2d 547, 550 (1993) (emphasis omitted) (quoting People v. Bush, 466 N.W.2d 736, 741 (1991)). Robbery and attempt to commit a robbery are felonies enumerated in the statute. See MICH. COMP. LAWS § 750.316(1)(b).

The parties stipulated at the preliminary examination that William Crayne died from two bullet wounds, one to the back of his head, which penetrated his brain, and

12

one to his left flank.  (Tr. Apr. 23, 1979, at 4-5.)  Sherry Jurumu[4] testified at the hearing

that, on January 27, 1979, Petitioner put a gun in his belt and said, "There's two guys

waiting down the street."  Michael Loukas was present with Petitioner, and he said that

they intended to "rip off" the men.  Petitioner and Loukas left the house together.  When

they returned about forty-five minutes later, Loukas said that he had been in a fight, and

he mentioned a killing.  Petitioner had the gun, and he told Loukas to "shut up."  (Id. at

14-20.)

Jeff Galloway testified at the preliminary examination that Petitioner was armed

with a .22 caliber automatic pistol on the night in question.  Petitioner announced that he

and Michael Loukas intended to go out and "rip off" some people.  Galloway saw them

leave the house.  When Petitioner and Loukas returned home thirty to forty-five minutes

later, Galloway observed blood on them.  Galloway asked what had happened, and

Petitioner responded that they had shot two men.  Loukas told Galloway that Petitioner

had tried to get one man's wallet after shooting the men.  (Id. at 46-53.)

Michael Loukas's statement to the police was read into the record at the

preliminary examination.  Loukas informed the police that Petitioner armed himself after

determining that two hitchhikers, whom they had picked up, had money.  Loukas

responded to Petitioner by saying, "Let's get it."  Loukas and Petitioner then looked for

the hitchhikers.  Petitioner shot both men after getting into a fight with them.  Petitioner

said he wanted the man's wallet, and he walked over to a man who was lying on the

---

[4] Jurumu spelled her name as "Jurmu" at the preliminary examination, but the parties have referred to her as "Jurumu.  For the sake of consistency, the Court will spell her name as "Jurumu."

ground.  (Id. at 81-86.)

Based on the above, there was more than enough evidence presented at the preliminary examination to establish that Petitioner participated in a murder during a robbery or attempted robbery.  Therefore, defense counsel was not ineffective for failing to file a motion to quash the felony murder charge.

### 4.  Summary of Ineffective Assistance of Counsel Claims

Petitioner has failed to show that his attorneys' performances were deficient and that any deficiencies in their performances prejudiced the defense or appeal. Therefore, the state courts' denial of relief did not result in decisions that were contrary to Strickland.

### D.  The Prosecutor

Petitioner's third and fourth claims allege prosecutorial misconduct.  To prevail on a claim of prosecutorial misconduct, a petitioner must show that the alleged misconduct infected his trial with such unfairness as to make the resulting conviction a denial of due process.  Byrd v. Collins, 209 F.3d 486, 529 (6th Cir. 2000) (quoting Darden v. Wainwright, 477 U.S. 168, 181 (1986) (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974)).  Courts must keep in mind that "the touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor."  Smith v. Phillips, 455 U.S. 209, 219 (1982). "Therefore, even if the prosecutor's conduct was 'undesirable or even universally condemned,' Darden, 477 U.S. at 181 (quotation marks and citations omitted), it does not constitute a due process violation unless 'the conduct was 'so egregious so as to render the entire trial fundamentally unfair.' " Byrd v. Collins, 209 F.3d at 529 (end citations omitted).

14

Furthermore, prosecutorial misconduct falls into the category of trial, rather than structural, errors and may be reviewed for harmless error.  Maurino v. Johnson, 210 F.3d 638, 647 (6th Cir. 2000), abrogated on other grounds by Harris v. Stovall, 212 F.3d 940, 942-43 (6th Cir. 2000).

### 1.  Suppression of Evidence

The third habeas claim alleges that the prosecutor suppressed evidence that Mr. Nagy's  wallet with money in it and the victims' other personal belongings were returned to their families.  The Supreme Court held in Brady v. Maryland, 373 U.S. 83, 87 (1963), that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."  "[E]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.  A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome."   United States v. Bagley, 473 U.S. 667, 682 (1985).

A police officer stated in his report on the crime that he returned some money taken from Richard Nagy's wallet to Nagy's parents.  See Petitioner's bound exhibits, Exh. I.  Petitioner presumably had access to the same police report.  "[T]here is no Brady violation if the defendant knew or should have known the essential facts permitting him to take advantage of the information in question, or if the information was available to him from another source."  Carter v. Bell, 218 F.3d 581, 601 (6th Cir. 2000).

Furthermore, evidence that personal property was returned to the victims'

15

families was not material evidence, because the prosecutor was not obligated to show that a robbery actually occurred.  It was sufficient to prove that Petitioner attempted to rob one of the victims.

Petitioner further alleges that, in an attempt to prove the element of robbery, the prosecutor gave the false impression that the victims' wallets were missing at the crime scene.  There is no merit in this allegation, because Police Officer Donald Sanderson testified for the prosecution that he retrieved a wallet from Richard Nagy's pants, and prosecution witness Harry Crayne testified that his deceased brother, William Crayne, lost his wallet at a party he attended before the shooting.  (Tr. July 16, 1979, at 109, 123.)

Nor did the prosecutor give the false impression that Petitioner robbed or attempted to rob the victims.  The prosecutor based his comments and arguments on evidence adduced at trial.  One witness testified that Petitioner looked for one of the men's wallets and possessed money after the shooting, but not before the shooting. Petitioner himself admitted at trial that he had intended to take money from the victims, and other witnesses testified that Petitioner and Michael Loukas had said they intended to "rip off" the victims.

### 2.  Injecting Personal Belief

Petitioner alleges next that the prosecutor injected his personal belief into the trial.  Specifically, alleges Petitioner, the prosecutor repeatedly stated what he thought had happened, and he maintained that one or both of the defendants could have shot the victims.

The prosecutor said in his opening statement that Petitioner shot the men.  At

16

another point in the opening statement, he said that he thought both men put bullets in

the victims.  (Id. at 101-04.)  In his closing argument, the prosecutor said, "I submit that

Donald Mahaday was actually the man who pulled the trigger up here on the street."

(Tr. July 18, 1979, at 345.)

Whether one or both defendants shot the victims was irrelevant, because the

prosecutor's theory was that Petitioner was guilty either as a principal or as an aider and

abettor.  Jeff Galloway and Sherry Jurumu implied that Petitioner was the shooter, and

Petitioner testified that he accompanied Loukas on a mission to take money from the

victims in return for fake drugs.  Petitioner also testified that he knew Loukas was

armed.  (Tr. July 17, 1979, at 267-70.)  Therefore, the prosecutor's comments and

conjectures were supported by the facts.  Any error was harmless in light of the strength

of the evidence and the admonition by both the prosecutor and the trial court that the

attorneys' statements and arguments were not evidence.  (Tr. July 16, 1979, at 96; Tr.

July 18, 1979, at 343-44, 374.)

### 3.  Alleged Failure to Disclose

Petitioner's next claim about the prosecutor is that he failed to disclose the fact

that he made a deal with a prosecution witness.  Petitioner contends that the prosecutor

arranged for a prosecution witness to receive a light sentence in an unrelated case in

exchange for his testimony at Petitioner's trial.

Petitioner does not identify the witness, but he obviously is referring to Jeff

Galloway, who testified on direct examination that he had been convicted of armed

robbery and was presently incarcerated in a state prison.  Galloway further testified that

he did not make a bargain with the authorities for information about Petitioner's case,

17

but the prosecutor did inform his sentencing judge that he (Galloway) provided some information about a murder.

On cross-examination, defense counsel brought out that Galloway was sentenced to a term of only three to twenty years for the armed robbery.  Galloway explained, however, that although the prosecutor was present at his plea and sentencing, the trial court sentenced him to the same amount of time that his attorney told him to expect before the prosecutor spoke out in his behalf.  (Tr. July 17, 1979, at 208-10, 224-26.)

The prosecutor did not hide the fact that he had talked to Galloway's sentencing judge.  Furthermore, it is clear from defense counsel's cross-examination of Galloway that the defense attorney was aware of Galloway's sentence and the prosecutor's intervention at Galloway's sentencing.  As previously explained, "there is no <u>Brady</u> violation if the defendant knew . . . the essential facts permitting him to take advantage of the information in question . . . ."  <u>Carter v. Bell</u>, 218 F.3d at 601.

### 4.  Misstating the Evidence

Petitioner maintains that the prosecutor misstated the evidence in his closing arguments by commenting that witnesses, who were not present at the crime scene, saw and heard the crimes being committed.  It appears from the context of the prosecutor's argument that he was referring to what the witnesses saw and heard in Petitioner's home before and after the shooting.  (Tr. July 18, 1979, at 364.)  Thus, the prosecutor did not misstate the evidence.

### 5.  Misstating the Law

18

Petitioner contends that the prosecutor misstated the law when he said to the jury:

> [Y]ou don't have to have a gun for robbery.  All you have to have is force or threat of force, an assault.  All you have to do is come up there and grab somebody or threaten them in a threatening manner and say give me the money.  That's all you have to have.  That's the attempted armed robbery.

(Id. at 370.)  The underlying felony was robbery or attempted robbery, not armed robbery.  However, any confusion caused by the prosecutor's reference to attempted armed robbery obviously was a slip of the tongue because he said moments earlier that the underlying felony was robbery or attempted robbery.  (Id. at 369.)  Moreover, the trial court explained to the jury that the underlying offense in the felony murder charge was robbery or attempted robbery.  (Id. at 381-85.)  Thus, the prosecutor's error was harmless.

### 6. Impeachment

Petitioner's final argument about the prosecutor is that he impeached Petitioner with a nonexistent felony conviction.  This claim arose when the prosecutor asked Petitioner on cross-examination whether he had been convicted of only one felony.  Petitioner responded, "That's right."  The prosecutor then intimated that Petitioner was lying and that he had been convicted of a second felony (larceny in a building) in 1978.  Petitioner replied that the 1978 conviction was a misdemeanor.

Defense counsel objected to the introduction of inadmissible crimes.  The trial court sustained the objection after determining at a side bar that the disputed conviction appeared to be a misdemeanor.  The prosecutor maintained that he was justified in asking whether Petitioner had been convicted of a second felony.  He denied

19

intentionally injecting error in the case.  (Tr. July 17, 1979, at 307-08, 310-13.)

The Michigan Court of Appeals determined that the prosecutor's error was not intentional.  The court of appeals noted that "[o]nly a close reading of [Petitioner's] criminal record would have revealed that the conviction was a misdemeanor rather than a felony, as the prosecutor suggested."  Mahaday, 310 N.W.2d at 807.  The state court concluded that no prejudice resulted from the error.  This conclusion was objectively reasonable, because the trial court promptly informed the jurors that there was no evidence of any other felony and that they should disregard the prosecutor's question.  (Id. at 308.)

Furthermore, there was evidence presented at trial that Petitioner had been convicted of a different offense, that he used illegal substances, and that he intended to sell fake mescaline to the victims.  The reference to larceny in a building could not have had a "substantial and injurious effect or influence in determining the jury's verdict" and was harmless.  Brecht v. Abrahamson, 507 U.S. 619, 637 (1993) (quoting Kotteakos v. United States, 328 U.S. 750, 776 (1946)).

### 7.  Summary of the Prosecutorial Misconduct Claims

Petitioner has failed to show that the prosecutor's conduct and remarks permeated the entire trial and deprived him of due process.  Any errors were harmless, because they could not have had a substantial and injurious effect or influence on the jury's verdict in light of the strength of the evidence.  Therefore, the state courts' rejection of Petitioner's prosecutorial-misconduct claim was not contrary to, or an unreasonable application of, Supreme Court precedent.

### E.  The Jury Instructions

20

The sixth habeas claim alleges that the trial court failed to instruct the jury on Petitioner's theory of the case.  The ninth habeas claim alleges that the trial court's instruction on intoxication was inadequate.

The question on habeas review of jury instructions is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process."  Cupp v. Naughten, 414 U.S. 141, 147 (1973).  "It is well established that the instruction 'may not be judged in artificial isolation,' but must be considered in the context of the instructions as a whole and the trial record."  Estelle v. McGuire, 502 U.S. 62, 72 (1991) (quoting Naughten, 414 U.S. at 147).

### 1.  Petitioner's Theory of the Case

Petitioner alleges that the trial court failed to explain his theory of the case to the jury.  Petitioner's theory was that the prosecutor did not prove the underlying felony for the felony murder charge and that the only crime he committed was taking money under false pretenses, which is a misdemeanor.

Defendants in criminal cases possess a constitutional right to present a complete defense.  California v. Trombetta, 467 U.S. 479, 485 (1984).  "A necessary corollary of this holding is the rule that a defendant in a criminal trial has the right, under appropriate circumstances, to have the jury instructed on his or her defense, for the right to present a defense would be meaningless were a trial court completely free to ignore that defense when giving instructions."  Taylor v. Withrow, 288 F.3d 846, 852 (6th Cir. 2002). "As a general proposition a defendant is entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor. " Mathews v. United States, 485 U.S. 58, 63 (1988) (citing Stevenson v. United

21

States, 162 U.S. 313 (1896)).

The parties did not dispute that a murder occurred, and the evidence at trial indicated that Petitioner was guilty of more than an attempt to obtain money by false pretenses. Petitioner was not entitled "to offer any defense, nor to demand [that] a jury be instructed on any theory." Taylor v. Withrow, 288 F.3d at 853.

Moreover, the record does not reflect a request by defense counsel to instruct on false pretenses. (Tr. July 19, 1979, at 318-27.)[5]  In fact, defense counsel stated that he was satisfied with the instructions. (Id. at 402.)  Therefore, the trial court did not deprive Petitioner of a fair trial, and the state courts' denial of relief did not result in a decision that was contrary to Supreme Court opinions on jury instructions.

### 2. Intoxication

Petitioner contends that the trial court's instruction on intoxication was inadequate. He has not explained how the instruction was inadequate, but he argued in state court that the trial court failed to instruct the jury that drunkenness or drug intoxication could be a defense to the charge of first-degree murder.

The Michigan Court of Appeals found no factual basis to support this claim. The court of appeals noted that the trial court did instruct on intoxication in connection with first-degree murder, assault with intent to murder, and the lesser-included offense of assault with intent to do great bodily harm. See Mahaday, 310 N.W.2d at 806.

The state court's factual conclusion is supported by the record and therefore did not amount to an unreasonable determination of the facts. When instructing the jurors

---

[5]  Defense counsel did argue to the jury that the crime was taking money under false pretenses by selling fake dope. (Tr. July 19, 1979, at 354-55.)

on first- and second-degree murder, the trial court explained to the jurors that the state

of mind of the accused was of great importance.  The court said that, when judging

intent, the jury must consider all the facts and circumstances, including "what effect drug

intoxication or drunkenness, if any, might have had on the defendant's state of mind."

(Id. at 385.)

When instructing the jury on assault with intent to commit murder and the lesser-

included offense of assault with intent to commit great bodily harm less than murder, the

trial court said:

> With respect to either or both of these offense[s] I charge you that the
> question of intent requires that you consider any evidence reflecting upon
> the state of mind of a defendant at the time of the act.  And I gave you a
> similar instruction with respect to Count 1 [felony murder].  You may
> consider whether a defendant's appearance, conduct, and manner in
> determining whether or not the defendant's judgement or common sense
> was disturbed.  Consider whether the defendant appeared intoxicated,
> and what effect, if any, such a condition had on his mental facilities.  I
> instruct you that evidence of drunkenness or drug intoxication may be
> used in a defense of the charge of assault with intent to murder or assault
> with intent to do great bodily harm less than murder. And all such
> evidence should be weighed in determining whether or not the defendant
> had the necessary specific intent to commit either of these crimes.

(Id. at 393-94) (emphasis added.)

The jury instructions adequately informed the jurors on the defense of

intoxication.  Therefore, Petitioner was not deprived of due process, and the state

court's conclusion that there was no factual basis for Petitioner's claim did not result in a

decision that was contrary to, or an unreasonable application of, Supreme Court

decisions on jury instructions.  To the extent that Petitioner is arguing a violation of state

law, his claim is not cognizable on habeas review.  McGuire, 502 U.S. at 71-72.

### F.  Juror Conduct

23

The eighth habeas claim alleges that Petitioner was deprived of a fair trial by a juror's comment that she believed Petitioner was guilty. This incident supposedly occurred on the first or second day of trial.

"The Sixth and Fourteenth Amendments to the Constitution guarantee a criminal defendant the right to an impartial jury." Wolfe v. Brigano, 232 F.3d 499, 501 (6th Cir. 2000) (citing Morgan v. Illinois, 504 U.S. 719 (1992)). However,

> due process does not require a new trial every time a juror has been placed in a potentially compromising situation. . . . Due process means a jury capable and willing to decide the case solely on the evidence before it, and a trial judge ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen.

Smith v. Phillips, 455 U.S. at 217.

The only evidence supporting Petitioner's claim is an affidavit signed and dated by his father on December 20, 1996. Mr. Mahaday states in his affidavit that he overheard one juror say to another juror, "As far as I'm concerned, he's guilty right now. Look at that poor woman crying." Mr. Mahaday allegedly informed Petitioner's trial attorney about this conversation, but the attorney did nothing.

Petitioner has not identified the jurors involved in the incident, and the transcript of trial does not refer to the incident. Thus, Petitioner has failed to show that the jurors who deliberated his case were actually prejudiced against him, and the state court's denial of relief did not result in a decision that was contrary to Supreme Court precedent.

### IV.  Conclusion

For all the reasons given above, Petitioner has failed to show that he is entitled to habeas relief on any of his claims. Accordingly, the application for a writ of habeas

24

corpus is **DENIED** and this matter is **DISMISSED.**

      **SO ORDERED.**


           s/Avern Cohn                     
          AVERN COHN
          UNITED STATES DISTRICT JUDGE


Dated: April 27, 2005


I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, April 27, 2005, by electronic and/or ordinary mail.

           s/Julie Owens                    
          Case Manager
          (313) 234-5160